## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN NEWLAND,         )        CIVIL ACTION NO. 3:18-22
                             )
          Plaintiff,       )
                             )        JUDGE KIM R. GIBSON
      v.              )
                             )
NORFOLK SOUTHERN RAILWAY  )
COMPANY,                  )
                             )
         Defendant.      )

## MEMORANDUM OPINION

This case involves Plaintiff Steven Newlan's ("Newlan")[1] claims against Defendant Norfolk Southern Railway Company ("Norfolk") pursuant to the Federal Employers' Liability Act (the "FELA"). (ECF No. 1). Pending before the Court is Norfolk's Motion for Summary Judgment. (ECF No. 70). The issues in Norfolk's motion have been fully briefed, (ECF Nos. 70, 71, 72, 73), and the motion is ripe for disposition. For the reasons that follow, the Court **DENIES** the motion.

### I.     Jurisdiction

The Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1331 because Newlan brings his claims pursuant to the FELA. (ECF No. 1 at 1). Venue is proper in this District because it appears that Norfolk was doing business in this District at the time when Newlan commenced this action. (*Id.* at 1–2; ECF No. 8 at 1–2); *see* 45 U.S.C. § 56 ("Under this

---

[1] The Court notes that the caption of this case refers to Plaintiff as Steven Newland. However, in his Response to Norfolk's Motion for Summary Judgment, (ECF No. 73), Plaintiff consistently spells his last name Newlan. Therefore, the Court will use that spelling throughout this Opinion.

chapter an action may be brought in a district court of the United States … in which the defendant shall be doing business at the time of commencing such action.").[2]

## II.    Procedural History

On February 1, 2018, Newlan filed a Complaint against Norfolk, asserting claims pursuant to the FELA. (ECF No. 1 at 1). Newlan alleges that he was injured while working for Norfolk due to Norfolk's negligence, carelessness, and recklessness. (*See* ECF No. 1). Specifically, Newlan states that on or about February 15, 2015, while he was performing his job-related duties, he:

> [S]ustained … serious, permanent and painful personal injuries … to both shoulders due to the unsafe working conditions … [Newlan] was reaching into his work truck to get a welding mold when he slipped in a muddy, torn-up truck rut in the unimproved access along the rail. As he slipped, he began to fall with the heavy mold in his hand and felt intense pain in his left shoulder area. He was diagnosed with a rotator cuff tear and sprain that required surgical intervention.

(ECF No. 1 at 2). Indeed, Newlan contends that, because of Norfolk's negligence, he suffered "cumulative micro traumas disorders/repetitive stress injuries as follows: left shoulder torn rotator cuff, and arthritis and bone spurs in right shoulder." (*Id.* at 4).

On April 2, 2018, Norfolk filed its Answer to Newlan's Complaint. (ECF No. 8). Norfolk argued that Newlan does not have a viable cause of action against Norfolk under the FELA. (*Id.* at 1). Further, Norfolk stated that, insofar as "discovery reveals the same to be appropriate," it was raising the "applicable statute of limitations" as a bar to Newlan's claims. (*Id.* at 4).

---

[2] Even if the provisions of 45 U.S.C. Section 56 were not satisfied in this case, Norfolk has failed to timely object to venue in this District and has therefore waived any objection to venue being proper before this Court. *Breland v. ATC Vancom, Inc.*, 212 F.R.D. 475, 476 (E.D. Pa. 2002) (explaining that a defendant may waive a venue objection by failing to object to venue in a timely fashion).

On October 1, 2021, Norfolk filed a Motion for Summary Judgment, arguing that Newlan's "deposition testimony established that his claims are barred by the three-year statute of limitations under" the FELA. (ECF No. 70 at 2). On that same day, Norfolk filed: (1) a Brief in Support of its Motion for Summary Judgment (ECF No. 71) and (2) its Concise Statement of Material Facts. (ECF No. 72). On October 8, 2021, Newlan filed a Response to Norfolk's Motion. (ECF No. 73).

III.    **Factual Background**[3]

A.    **Newlan's Complaint**

In his Complaint, Newlan alleges that on or about February 15, 2015, and for some time prior to that date, he suffered injuries to both of his shoulders. (ECF No. 72 at ¶ at 2; ECF No. 73 at ¶ 2). Specifically, Newlan asserts that on or about February, 15, 2015, he "'reach[ed] into his work truck to get a welding mold [and] he slipped in a muddy, torn-up truck rut in the unimproved access along the rail[,]' sustaining an injury to his left shoulder." (ECF No. 72 at ¶ 2–3; ECF No. 73 at ¶ 2–3) (quoting ECF No. 1 at ¶ 8). Further, according to Newlan, throughout his:

> 39-plus-year career at [Norfolk], [he] was "required to awkwardly carry, pull, and lift heavy equipment, machinery, and tools with insufficient support; was required to perform tasks and maneuver in awkward manner/positions; and was subjected to repetitive motions which caused stress and trauma."

(ECF No. 72 at ¶ 4; ECF No. 73 at ¶4) (quoting ECF No. 1 at ¶ 10).

---

[3] The Court derives the facts in the following section from a combination of: (1) Norfolk's Motion for Summary Judgment, Brief in Support, and Concise Statement of Material Facts (ECF Nos. 70, 71, 72); (2) Newlan's Response in Opposition (ECF No. 73); and (3) exhibits that the parties have attached to their submissions to the Court. (ECF Nos. 70, 73). Unless otherwise noted, the parties agree on the facts in this section.

In short, Newlan alleges that Norfolk's improper conduct caused him to injure both his left and right shoulders during his employment. Because Norfolk contends that the three-year statute of limitations bars Newlan's claims concerning both shoulders, the Court now examines the record evidence with respect to when Newlan became aware of his injuries.

### B.      Newlan's Left Shoulder

There are three distinct periods in time that are relevant to Newlan's claims regarding his left shoulder: (1) the events prior to the middle of February 2015; (2) the events that occurred on or about February 15, 2015; and (3) the medical treatment that Newlan received following the events that occurred in the middle of February 2015. The Court reviews these periods of time in turn.

#### 1.      The Events Prior to the Middle of February 2015

At his deposition, Newlan testified that during his employment at Norfolk, he was responsible for helping to move items called joint bars. (ECF No. 73-1 at 63:2–64:13). While working in Alliance, Ohio, Newlan was tasked with helping to "throw" the joint bars "up on [a] shelf." (*Id.* at 44:22–24; 65:7–21). Although there were pallets available, Newlan and his coworkers "did not stack the joint bars on pallets in Alliance. We stacked them on shelves, probably at least chin to nose high, and we had to throw them up there." (*Id.* at 65:22–66:1).

When asked whether he hurt himself throwing joint bars at Alliance, Newlan answered in the affirmative. (*Id.* at 72:1–3). Specifically, he stated that he believed that that was when he "felt this in my [left shoulder], and I kept working. Thought it was just the muscle and the pain would go away." (*Id.* at 72:4–16). Indeed, Newlan stated that he had pain from the first day that he lifted one of the joint bars overhead. (*Id.* at 87:23–88:4; 111:6–9).

4

Finally, in terms of the timeframe when Newlan began stacking the joint bars on shelves in Alliance, Ohio, Newlan speculated that he may have started doing so in 2014. (*Id.* at 69:7–19; 85:16–24).

### 2.   The Events That Occurred on or About February 15, 2015

At his deposition, Newlan confirmed that his Complaint was accurate insofar as it stated that on or about February 15, 2015: (1) he was performing his duties for Norfolk, (2) he was "reaching into his truck to get a welding mold when he slipped in a muddy, torn-up rut in the unimproved access along the rail[,]" (3) and, as he slipped, he "began to fall with the heavy mold in his hand and felt intense pain in the left shoulder area." (*Id.* at 77:21–78:22). Newlan stated that, on the day he slipped, he would describe his pain as a "seven out of ten." (*Id.* at 221:18–21).

In terms of the relationship between lifting the joint bars and his fall in the middle of February 2015, Newlan offered the following testimony:

> **Q:** And so when did you realize you had hurt your left shoulder from throwing those bars into the—
> **A:** I felt something pop, and when I slipped in the mud and I couldn't hold the weight of that mold, and I went down. And that's what led to all this.
> **Q:** So when was it that—you said the damage was already done?
> **A:** I think by throwing them bars up there over my head. I thought I pulled a muscle. I didn't know what a torn rotator cuff was.
> **Q:** When was it that you realized that throwing the bars onto the rack in the— hold on—in the Alliance mechanic shed that you injured your left arm?
> **A:** It had something to do with it, yes.
> **Q:** I know, but when did you know that throwing the bars up—when did you feel that injured your shoulder?
> **A:** I just felt it.
> **Q:** When?
> **Q:** Was it before February 2015 that you were throwing the bars—
> **A:** It was probably about that time.
> **Q:** You have to let me—

**A:** I'm sorry.
**Q:** --finish my question, okay. I know you want to answer it. So, was it before February 15, 2015[,] that you said the damage was done to the left shoulder?
**A:** From throwing the bars, I believe so. Then when I slipped in the mud, that just tore it more, probably. Because of the conditions.

(*Id.* at 80:2–81:16).

Further, Newlan testified that it was around February 15, 2015, when he "started feeling the shoulder from the bars. And then when [he was] working at Lum Interlocking, that's when [he] slipped[,] and [he] felt the other part." (*Id.* at 105:4–12). Indeed, when asked when he first noticed that his left shoulder was bothering him, Newlan stated that it was "[p]robably about the 15th—the year '15 is when the shoulder started bothering me throwing them bars up, but we had been throwing them bars up for a long time." (*Id.* at 105:4–23). Finally, Newlan stated that he "got it wrong" insofar as he had indicated that he first felt pain in his left shoulder in 2014. (*Id.* at 105:24–106:7).

In sum, Newlan testified to the following regarding the events of February 15, 2015:

We were working in Alliance at Lum Interlock, and in the mud. And the panels on there slide[], and when I slipped, this was already—I had gone from throwing them bars up there over my head, but when I went down, I felt a—I didn't even know what a rotator cuff tear was. I thought I just pulled a muscle and it would go away. I went to see my family doctor and he sent me to a specialist, like a referral. They did an MRI and it was ripped.

(*Id.* at 78:23–79:12). Indeed, Newlan felt the tear in his left shoulder on "approximately" February 15, 2015. (*Id.* at 79:17–22).

### 3. The Medical Treatment That Newlan Received Following the Events That Occurred in the Middle of February 2015

After the events of February 2015, Newlan went to see his family doctor, who referred him to a specialist—Dr. Joseph Stefko. (*Id.* at 79:10–12; 163:12–20). On May 27, 2015, Newlan

6

saw Dr. Stefko for the pain that he was experiencing in his left shoulder. (ECF No. 73-2 at 12). Newlan told Dr. Stefko that his left shoulder had been causing him pain for three weeks. (ECF No. 73-1 at 165:19–166:7).

In his notes regarding Newlan's visit on May 27, 2015, Dr. Stefko indicated that Newlan had "onset left shoulder pain along with motor weakness. Examination is suggestive of rotator cuff deficiency. Suggest further imaging." (ECF No. 73-2 at 14). Moreover, Dr. Stefko had Newlan undergo an MRI. (*Id.*).

On June 8, 2015, Dr. Stefko diagnosed Newlan with a torn rotator cuff and instructed him to have surgery. (*Id.* at 16). On June 25, 2015, Newlan had surgery to repair his torn rotator cuff. (*Id.* at 18).

### C.      Newlan's Right Shoulder

With respect to Newlan's right shoulder, the Court first examines the record evidence regarding the damage to that shoulder. The Court then outlines the medical care that Newlan received.

#### 1.   The Evidence Regarding the Damage to Newlan's Right Shoulder

At his deposition, Newlan testified that his right shoulder had "probably" been hurting him "off and on" for five years before 2016. (ECF No. 73-1 at 223:18–20). Further, he stated that he "had a little pain" prior to 2016. (*Id.* at 224:5–10). However, he stated that he was only speculating as to whether his pain went back five years prior to 2016. (*Id.* at 225:8–11).

Moreover, when asked whether his right shoulder injury was caused by lifting the "heavy bars[,]" he responded that it "could have been from my left shoulder where I had to go almost right-handed because I couldn't use my left hand. I don't know." (*Id.* at 223:25–224:4).

And when asked whether he is claiming that the lifting he did at work caused his right shoulder pain, Newlan replied that it caused his left shoulder pain, but not his right shoulder pain. (*Id.* at 226:16–25). Specifically, he stated that the lifting did not cause the injury to his right shoulder, "but it could have related to the right, but it started with the bars; and working in those conditions is why [my left shoulder] went." (*Id.* at 226:16–227:2).

### 2. The Medical Care That Newlan Received for the Damage to His Right Shoulder

At his deposition, Newlan was asked about Dr. Stefko's note indicating that Newlan saw Dr. Stefko in March 2016, at which time Newlan described a "close to … one-year history of activity related superior shoulder (right shoulder) discomfort." (*Id.* at 194:21–25). Newlan agreed that he was in fact complaining of activity-related right shoulder discomfort for approximately one year prior to his March 2016 visit with Dr. Stefko. (*Id.* at 194:21–195:2).

On July 5, 2016, Newlan underwent surgery on his right shoulder. (ECF No. 73-4 at 71).

## IV. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also* FED. R. CIV. P. 56(a).  Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Material facts are those that will affect the outcome of the trial under governing law. *Id.*  The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a

reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). In making this determination, the Court must draw all inferences "in the light most favorable to the nonmoving party." *Id.* "When there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Id.* (quoting *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 81 (3d Cir. 1982)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

Finally, summary judgment is not appropriate when a case will turn on credibility determinations. *Id.*; *see Liberty Lobby*, 477 U.S. at 255.

## V.     Discussion

### A.     Parties' Arguments

Norfolk contends that summary judgment is warranted because the statute of limitations for FELA claims is three years, and Newlan knew of his "injuries and their causes

more than three years before commencing this lawsuit." (ECF No. 71 at 1–3). Specifically, with respect to his left shoulder, Norfolk contends that Newlan testified that: (1) he knew he was hurting his left shoulder by lifting joint bars during the course of his job as early as 2014, and (2) he hurt his left shoulder prior to slipping in the mud on February 15, 2015. (*Id.* at 3). With respect to his right shoulder, Newlan told Dr. Stefko that it had been hurting him for about five years before 2016. (*Id.* at 3–4). In short, Norfolk argues that because Newlan's "cause of action for these injures would have accrued, at a minimum, sometime in 2014, they are barred by the statute of limitations." (*Id.* at 4).

In response, Newlan contends that he only became aware of the damage to his left and right shoulders "after he injured his shoulders bracing himself from a fall on February 15, 2015." (ECF No. 73 at 3). Newlan notes that it was only after this event that he began treating with Dr. Stefko and lost shoulder function. (*Id.*). Therefore, Newlan argues that, because he became aware of his injuries in February or March 2015, and because he filed his Complaint on February 1, 2018, the statute of limitations does not bar his claims. (*Id.*).

### B.      The FELA's Statute of Limitations

Under the FELA's statute of limitations, "an action must be 'commenced within three years from the day the cause of action accrued.'" *Brenner v. Consol. Rail Corp.,* 806 F. Supp. 2d 786, 792 (E.D. Pa. 2011) (quoting 45 U.S.C. § 56). Under the "'discovery rule,' a plaintiff's cause of action accrues when the injury manifests itself." *McCain v. CSX Transp., Inc.,* 708 F. Supp. 2d 494, 497 (E.D. Pa. 2010) (citing *Urie v. Thompson,* 337 U.S. 163, 170 (1949)). However, "for injuries that occur over time, such as repetitive stress injuries, the specific date of injury is difficult to determine." *Id.* at 497–98. In such cases, the Third Circuit "has held that 'the statute of

limitations begins to run when the employee becomes aware of his disease and its cause.'" *Brenner*, 806 F. Supp. 2d at 792 (quoting *Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 358 (3d Cir. 1986)); *see also Urie*, 337 U.S. at 170 (finding in the case of a plaintiff exposed to silica dust that "the afflicted employee can be held to be injured only when the accumulated effects of the deleterious substance manifest themselves") (internal quotation marks and citations omitted). Plaintiffs "have 'an affirmative duty to exercise reasonable diligence and investigate the cause of a known injury.'" *Id.* (quoting *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001)).

Finally, when a "statute of limitations begins to run is ordinarily a question of fact. When the facts are established, the inquiry becomes a question of law." *McCain*, 708 F. Supp. 2d at 497; *see also Brenner*, 806 F. Supp. 2d at 793 (stating that it will be a "question for the jury whether Plaintiff was or should have been aware of his knee condition" at an early enough point such that his claims were barred by the statute of limitations).

C.    **Analysis**

1.    **Summary Judgment is Not Warranted With Respect to Newlan's Claims Involving His Left Shoulder**

The Court begins its analysis by noting that Newlan filed his Complaint on February 1, 2018. (ECF No. 1). Therefore, the first question before the Court is whether there is sufficient record evidence for a reasonable jury to find that Newlan's injury to his left shoulder accrued after February 1, 2015. *Brenner*, 806 F. Supp. 2d at 792.

a.    **Record Evidence That Indicates Newlan Only Became Aware of the Injury to His Left Shoulder in the Middle of February 2015**

11

In answering this question, the Court must first consider when Newlan became aware of the injury to his left shoulder. *Id.* (explaining that a repetitive stress injury accrues when the employee becomes aware of his injury and its cause).

Here, there is testimony of record and medical evidence indicating that Newlan only began feeling pain in his left shoulder, and only became aware of the injury to that shoulder, in the middle of February 2015.

In terms of the testimony that Newlan offered at his deposition, he stated that it was around February 15, 2015, that he began experiencing the pain in his left shoulder due to lifting the joint bars. (ECF No. 73-1 at 105:4–23). Further, Newlan stated that on or around February 15, 2015, he fell while working at Lum Interlock, at which time he felt a tear in his left shoulder. (*Id.* at 78:23–79:22). After these events, he went to see his family doctor and discovered that his rotator cuff was torn. (*Id.* at 79:10–12). All of this evidence indicates that Newlan only began feeling pain in his left shoulder, and only became aware of the injury to that shoulder, in the middle of February 2015.

Turning to the medical evidence, on May 27, 2015, Newlan saw Dr. Joseph Stefko for the pain that he was experiencing in his left shoulder. (ECF No. 73-2 at 12). Newlan told Dr. Stefko that his left shoulder had been causing him pain for three weeks. (ECF No. 73-1 at 165:19–166:7).[4] Newlan ultimately had surgery to repair his torn rotator cuff on June 25, 2015. (ECF No. 73-2 at 18).

---

[4] The Court notes that this statement is inconsistent with Newlan's testimony that he began experiencing pain in his left shoulder around the middle of February 2015. However, Newlan indicated that he might not have been forthcoming with medical personnel out of fear over how Norfolk would respond to his injury. (ECF No. 73-1 at 170:7–171:16). Ultimately, Newlan's credibility and the exact time at which he knew he had injured his left shoulder are issues for the jury to resolve.

This evidence is critical because Newlan testified that on the day he slipped (i.e., on or around February 15, 2015), he would describe his pain as a "seven out of ten." (ECF No. 73-1 at 221:18–21). Given the significant pain associated with a torn rotator cuff, it is unlikely that Newlan would have experienced the onset of this pain in 2014 (whether from the buildup to a torn rotator cuff or the tear itself) and yet waited until the spring of 2015 to seek medical attention. Indeed, if the jury were to find that Newlan: (1) only went to see his family doctor after February 15, 2015, and (2) had surgery on his torn rotator cuff in June 2015, those findings would bolster the notion that Newlan knew of an injury to his left shoulder in the middle of February 2015 rather than some point in 2014.

Therefore, there is evidence indicating that Newlan only became aware of the injury to his left shoulder in February 2015.

### b.     A Reasonable Jury Could Consider Newlan's Other Testimony and Still Find That He Only Became Aware of His Injuries in February 2015

The Court now considers additional testimony offered by Newlan. In doing so, the Court concludes that Newlan's additional testimony can be read in a fashion that would permit a reasonable jury to find that Newlan was only aware of the injury to his left shoulder in February 2015.

As the Court noted earlier, Norfolk stresses that Newlan testified to the following: (1) he knew he was hurting his shoulder while lifting the joint bars and placing them on the shelf in Alliance, Ohio, which occurred as early as 2014; and (2) his left shoulder hurt before he slipped in the mud on February 15, 2015. (ECF No. 71 at 3). On this basis, Norfolk contends that Newlan was aware of his injury and its cause prior to February 1, 2015. (*Id.* at 3–4).

First, with respect to whether Newlan knew, as early as 2014, that he was hurting his left shoulder from lifting the joint bars, (ECF No. 71 at 3; ECF No. 72 at 2; ECF No. 73-1 at 87:23–88:13), it is true that Newlan testified that he was hurting his left shoulder from the time that he began lifting the joint bars. (ECF No. 73-1 at 87:23–88:13). Newlan also implied that he began experiencing pain from lifting the joint bars in 2014. (*Id.* at 88:7–13).

However, this line of questioning focused on whether Newlan began experiencing pain when he started doing the "job" of lifting the joint bars—it did not focus significantly on the year in which Newlan began performing that task. (*Id.* at 87:23–88:13). It is not clear that Newlan intended to connect the beginning of his pain with the year 2014. Further, later in his deposition, Newlan stated that he "got it wrong" insofar as he had previously indicated that he first felt pain in his left shoulder in 2014. (*Id.* at 105:24–106:7). And he plainly stated that he started feeling pain in his left shoulder from lifting the joint bars in February 2015. (*Id.* at 105:4–23). Therefore, a reasonable jury could find the following: (1) Newlan misspoke when he implied that it was 2014 when he began feeling pain in his left shoulder from lifting the joint bars and (2) his later statement that he began feeling pain in February 2015 provides the more accurate picture of the events in this case. *Cf. Videon Chevrolet, Inc. v. Gen. Motors Corp.*, 992 F.2d 482, 488 (3d Cir. 1993) (considering, at summary judgment stage, the "thrust of the discussion" between the witness and opposing counsel during the witness's deposition, and not permitting summary judgment over a potential "semantic misstep" that could not conclusively be deemed a concession of "one of the ultimate issues in the case"); *Bumbarger v. New Enter. Stone and Lime Co., Inc.*, 170 F. Supp. 3d 801, 819 (W.D. Pa. 2016) (explaining that if an affidavit contradicts an affiant's earlier deposition testimony, courts within the Third Circuit generally will not

disregard that affidavit if "independent evidence in the record bolsters an otherwise questionable affidavit ... [t]he corroborating evidence may establish that the affiant was mistaken, confused, or did not possess all of the facts during the previous deposition").

Second, with respect to Norfolk's contention that Newlan testified that he hurt his left shoulder before he slipped on or about February 15, 2015, (ECF No. 71 at 3; ECF No. 72 at 3; ECF No. 73-1 at 87:23–88:6), Newlan did indicate that he hurt his left shoulder prior to slipping on or about February 15, 2015. (ECF No. 73-1 at 87:23–88:20).

However, Newlan's statement that he hurt his left shoulder prior to February 15, 2015, leaves open the possibility that he hurt his left shoulder from lifting the joint bars between February 1, 2015, and February 15, 2015. This possibility finds support in Newlan's testimony that it was around February 15, 2015, when he "started feeling the shoulder from the bars. And then when [he was] working at Lum Interlocking, that's when [he] slipped[,] and [he] felt the other part." (*Id.* at 105:4–23). All of this would permit a reasonable jury to find that Newlan only began feeling pain in his left shoulder in February 2015.

Of course, a reasonable jury need not make that finding—the Court's point is simply that it *could* make such a finding. And such a finding would mean that Newlan's claims involving his left shoulder are not barred by the statute of limitations. Accordingly, Newlan's testimony on this issue does not warrant a grant of summary judgment in favor of Norfolk.[5]

---

[5] Norfolk also references the following portion of Newlan's testimony:

> **Q:** So, was it before February 15, 2015, that you said the damage was done to the left shoulder?
> **A:** From throwing the bars, I believe so. Then when I slipped in the mud, that just tore it more, probably. Because of the conditions.

In sum, having considered the entirety of the evidence cited by the parties, the Court holds that a reasonable jury could find that Newlan only became aware of the injury to his left shoulder in the middle of February 2015. As a corollary, a reasonable jury could find that Newlan only became aware of the cause of the injury to his left shoulder in the middle of February 2015. *Brenner*, 806 F. Supp. 2d at 792 (explaining that a repetitive stress injury accrues when the employee becomes aware of his injury and its cause).

Therefore, the Court denies Norfolk's motion for summary judgment with respect to Newlan's claims pertaining to his left shoulder.[6]

### 2. Summary Judgment is Not Warranted With Respect to Newlan's Claims Involving His Right Shoulder

---

**Q:** So this throwing the bars up onto the rack in that Alliance, Ohio facility, throwing those bars up when you felt your pain in your left shoulder, was that before you slipped on February 15th?
**A:** That would be before, yeah. And then when we were working in the conditions, which you probably have the pictures, and then I went down[.]

(ECF No. 72 at 2; ECF No. 73-1 at 81:11–25).

In considering this testimony, the Court again notes that Newlan's indication that he might have partially torn his rotator cuff prior to February 15, 2015, does not mean that his rotator cuff was partially torn prior to February 1, 2015. On the contrary, just before making this statement, Newlan indicated that it was "probably about" February 2015 when he was throwing the joint bars. (ECF No. 73-1 at 81:4–6). Therefore, insofar as Newlan testified that he might have partially torn his rotator cuff from throwing the joint bars, a reasonable jury could find that he did so in February 2015 (but prior to February 15, 2015). Accordingly, this testimony does not warrant a grant of summary judgment in favor of Norfolk.

[6] It is not clear to the Court whether Newlan's injury to his left shoulder is best described as a traumatic injury or a repetitive stress injury. (ECF No. 1 at 4) (stating that Newlan "suffered cumulative micro traumas disorders/repetitive stress injuries as follows: left shoulder torn rotator cuff). The Third Circuit has explained that when an "employee is injured in a traumatic incident, determination of the beginning of the limitations period generally presents little difficulty." *Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 358 (3d Cir. 1986). Here, if Newlan's injury is best described as a single traumatic injury, the evidence outlined above would permit a reasonable jury to find that Newlan suffered that traumatic injury in February 2015 (i.e., a reasonable jury could conclude that Newlan tore his rotator cuff when he began experiencing pain in his left shoulder in February 2015 or when he felt a tearing sensation when he fell in the middle of that month).

Turning to Newlan's right shoulder, the question before the Court is likewise whether there is sufficient record evidence for a reasonable jury to find that his injuries accrued after February 1, 2015. *Id.*

> **a.      A Reasonable Jury Could Find that Newlan Only Became Aware of the Injury to His Right Shoulder in or After February 2015**

In answering this question, the Court again begins with the issue of when Newlan was aware of the injury to his right shoulder.

Newlan did indicate that he felt some degree of pain in his right shoulder as early as 2011. (ECF No. 71 at 3–4; ECF No. 72 at 4; ECF No. 73-1 at 223:11–20).

However, construing the record evidence in a light most favorable to Newlan, this testimony does not mandate a finding that Newlan was aware of the injury to his right shoulder prior to February 2015, for several reasons. First, Newlan stated that the pain was "off and on" during the time between 2011 and 2016. (ECF No. 73-1 at 223:18–20). Second, Newlan testified that he "had a little pain" prior to 2016, calling into question how serious Newlan's pain was prior to February 2015. (*Id.* at 224:5–10). Third, Newlan stated that he told Dr. Stefko he was experiencing activity-related discomfort in his right shoulder for approximately one year prior to March 2016, meaning that he may have started having consistent discomfort around March 2015, very close in time to his fall in the mud. (*Id.* at 194:16–195:2). Finally, Newlan underwent surgery on his right shoulder on July 5, 2016, indicating that the consistent pain in his right shoulder began or intensified much closer to 2016 than 2011. (ECF No. 73-4 at 71).

From this evidence, a reasonable jury could find that: (1) Newlan's instances of pain in his right shoulder prior to February 2015 constituted minor, isolated, and intermittent episodes

that did not put Newlan on notice of the injury to his right shoulder and (2) Newlan only became aware of his injury in February or March 2015. *See Green v. CSX Transp., Inc.*, 414 F.3d 758, 764 (7th Cir. 2005) (holding that plaintiff's shoulder pain prior to a certain date may "have been little more serious than a scratch, failing to put a reasonable person on notice that she had suffered a cognizable injury and must sue or risk losing her right to do so"); *Brenner*, 806 F. Supp. 2d at 793 (finding that summary judgment was not warranted where plaintiff's complaints of pain from several years prior to the filing of his lawsuit could have been "isolated incidents [that occurred years apart] and years before the injuries that [were] the subject of plaintiff's" lawsuit).

Therefore, because a reasonable jury could find that Newlan only knew or should have known of the injury to his right shoulder in or after February 2015, the Court will deny Norfolk's motion.

### b.    A Reasonable Jury Could Find That Newlan Only Became Aware of the Cause of the Injury to His Right Shoulder in or After February 2015

Finally, the Court turns to the issue of when Newlan was aware of the cause of the injury to his right shoulder.

On this score, Newlan offered testimony that indicates he became aware of the cause of the pain in his right shoulder in or after February 2015. For example, when Newlan was asked if he thought his right shoulder could have been harmed from lifting the heavy bars, Newlan responded by pointing to the events of February 2015: "[i]t could have been from my left shoulder where I had to go almost right-handed because I couldn't use my left hand. I don't know." (ECF No. 73-1 at 223:25–224:4). And Newlan told Dr. Stefko he had been experiencing

18

activity-related pain in his right shoulder for approximately one year prior to March 2016, meaning that he may have started having consistent discomfort around March 2015, very close in time to his fall in the mud. (*Id.* at 194:16–195:2). Finally, when asked if he is claiming that lifting the joint bars (which Newlan might have done in 2014) caused his right shoulder pain, Newlan responded that he is not claiming that that activity caused the pain in his right shoulder. (*Id.* at 226:4–25). All of this testimony, which connects Newlan's pain in his right shoulder to the events of February 2015 and following, could lead a reasonable jury to conclude that Newlan only became aware of the cause of the injury to his right shoulder in or after February 2015.

Lastly, and critically, Norfolk has pointed to no evidence indicating that Newlan knew or should have known, prior to February 2015, of the cause of any injury to his right shoulder. (ECF Nos. 70, 71, 72).[7]

Therefore, a reasonable jury could find that Newlan only knew or should have known of the cause of his right shoulder pain in or after February 2015—after his fall in the mud and at the point when he began experiencing consistent pain in that shoulder.

Accordingly, because a reasonable jury could find that Newlan's right shoulder injury accrued in or after February 2015, the Court denies Norfolk's motion for summary judgment with respect to Newlan's claims involving his right shoulder.

---

[7] The Court notes that when Newlan was asked whether the pain in his right shoulder was caused by lifting the joint bars, Newlan responded "[I]t could have been. Like I said, there was bone spurs and calcium buildup. I don't know what that relates to." (ECF No. 73-1 at 226:11–15). The Court finds that this speculative and uncertain statement, which looks back in time from the date of Newlan's deposition to the events of 2014 and/or 2015, certainly does not make it an undisputed fact that Newlan knew or should have known, *at the time when he was potentially lifting joint bars prior to February 2015*, that that activity was the cause of any pain he was experiencing in his right shoulder.

VI.     **Conclusion**

For the foregoing reasons, the Court denies Norfolk's Motion for Summary Judgment.

(ECF No. 70). Of course, Norfolk may again raise its statute of limitations defense at trial.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN NEWLAND, | ) | CIVIL ACTION NO. 3:18-22 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

**AND NOW**, this ___26th___ day of September, 2022, upon consideration of Defendant Norfolk Southern Railway Company's Motion for Summary Judgment, (ECF No. 70), and in accordance with the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE

21